Mortgage Corporation of the South versus Bozeman. We'll hear first from Mr. Newsome. If you'll please the court, Burt Newsome for Appellant Mortgage Corporation of the South or MCS. This case deals with the confirmation of an illegal Chapter 13 plan in the effect of said confirmation on a fully secured mortgage creditor. An appellant MCS is asking this court to reaffirm its prior holding in an 11th Circuit case in Ray Bateman that held that a mortgage lien survives an illegal plan confirmation even though the creditor was bound by the terms of the debtor's confirmed Chapter 13 plan. In this case, right after the debtor filed bankruptcy, Mortgage Corporation of the South filed an arrearage-only claim for $6,817.42. The reason it did this is the maturity date on the debtor's loan, which was on a 12-year amortization, was outside the five-year life of the plan. The debtor filed their first plan after we filed their arrearage-only claim, listed the total amount of debt of MCS at $17,393.04. And then after the mentioned in the trustee's objection, the confirmation about anything about Mortgage Corporation of the South or MCS's claim, the debtor then amended their plan. And in their amended plan, it was illegal in about four different ways. One, it crammed down the amount of the debt to the collateral value, which is impermissible for a loan secured by a home mortgage. It reduced the interest rate by almost two-thirds from 19.7 to 7.568. And also, it converted long-term debt, which was a 12-year am, into a five-year loan, which the only way it could do that was by cramming down the rate. And also, very importantly, the plan itself called for Mortgage Corporation of the South to retain its lien unless it received 58 payments of $454. And, you know, there's a case that dealt with this. It's called N. Ray Shank. It's 569 BR-238. And it said, it was a Fifth Circuit case that said the Fifth Circuit determined for a lien to be voided. The plan must not preserve the lien. You know, the district court and the bankruptcy court held the residue to cot effect of the Chapter 13 plan was to void our mortgage lien. You know, the residue to cot effect of the plan cannot be an opposite of the term of the plan itself. The plan called for us to retain our lien unless we received payments, yet the court held our lien had been voided. There was another case that dealt with this called N. Ray Porter. And it said a confirmed plan has residue to cot effect only to the extent its provisions give clear notice to the creditors and other interested parties that the plan will have the claim effect. There was nothing in the plan that stated the MCS lien would be voided for the payment of 68-17-17. And in fact, the original claim we filed of the 68-17 at the contract rate was not even paid in full during the life of the plan. That arrears claim was paid at a lower rate of seven and a half percent. But you're not objecting to that, are you? We're objecting to the court stripping of our mortgage lien when we were not paid the total sum due. Right, so you're not objecting to I mean, you just mentioned that the arrearage that was paid was less than what you had actually claimed and you're not objecting to that. You're only objecting to the part about the remaining aspect of the mortgage not being paid and being charged out. Yes, ma'am. Yes, ma'am. And importantly, you know, they say that they relied on our claim as a full balance claim when one, and it's marked in about four spaces, it's an arrearage only claim. We have a copy of the note and a mortgage attached to the claim. We have a breakdown of the arrearage amount. And they say they amended their plan based on the fact that was a full balance claim. But yet in the plan itself, they listed the amount to be paid to us as $17,183. And, you know, there's the assumption of any lien modification must be included in the plan. And there's, it's a case, it's N. Ray Hudson, 260BR421. It talks about how a debtor in a proposed plan should not attempt to pull a fast one on a secured creditor by using the plan process to invalidate the lien. If they intended to only pay us $68,017 to get avoided the lien, that's the amount they should have stuck in their amended plan. But instead, they stuck the true balance up there, which was over $17,000, and said that our lien could not be voided unless they made 58 payments of 454, which totals almost $27,000. And there's an 11th Circuit case in N. Ray Dukes. It talks about how it's a Chapter 13 debtor's obligation to specify as accurately as possible in the plan, the amount that she and the debtor must pay the price if there's any ambiguity in the plan's terms. The amended plan that was confirmed clearly called for us to retain our lien unless we received 58 payments of $454. And it clearly showed us being the balance of the loan of over $17,000. If there was any reliance on that arrearage claim, any confusion, if they truly thought that was a full balance claim, that's what they would have stuck in the amended plan as our full balance. But, you know, the larger question is, you know, why is this important? You know, why are we in front of the 11th Circuit on a small loan like this? And Justice Stevens touched on this in the U.S. Supreme Court case in N. Ray Nobleman. He talked about how the legislative history of the bankruptcy code indicates a favorable treatment of residential mortgages to encourage the flow of capital in the home lending market. I mean, right now, home values are at a record high. A lot of people are pulling equity out of their house to build home offices, to pay off other debt. They're refinancing based on low interest rates. Almost all these loans flow to about five large mortgage servicers. Are we really telling them that these people that service these thousands of loans, if that you lose your in-rem rights in your collateral when you're not paid in full, are we holding for the first time ever that you can lien strip a fully secured forced mortgage loan? You know, the 11th Circuit has held in N. Ray Tanner that, you know, in order to lien strip a mortgage loan, it must not attach to any equity in a debtor's primary residence. It's undisputed that the lien of a mortgage corporation in the South in this claim was a fully secured forced mortgage loan. And the bankruptcy court and the district court both relied on this case out of Texas, this N. Ray Serra case, for saying that you could convert long-term debt into short-term debt. There is no 11th Circuit case that allows that. But even in N. Ray Serra, it said you can stuff it all into the plan if you can pay it back at contract rate. They couldn't do this in this case. The only way they could put it all inside the plan is to reduce the rate by over two-thirds. And in Long Beach Bullard, it's a U.S. Supreme Court case since 1886. It's still good law today for over 135 years. It says the lien of a mortgage created before bankruptcy is not affected by the discharge. The bankruptcy court and the district court made, they just totally ignored any distinction between our in personam rights to go against a debtor that are extinguished post-discharge and our in rem rights and our collateral, which the 11th Circuit has held, even posted Espinoza's survivor discharge. And, you know, lastly, much has been made about the failure of MCS to attach a Form 410 to the back of its proof of claim. Form 410 is used if a creditor has to pay forced place insurance or pay the back property taxes for a creditor to be able to recoup those expenses. The omission of including that form, no court has ever held that results in you losing your in rem rights and your mortgage like the courts did in this case. And there's cases that have dealt with this. N. Ray Millicent talks about the court notes the disallowance of the creditor's proof of claim does not avoid any lien that the creditor may hold on its debtor's principal residence. Even if we'd never filed a claim, we would not lose our in rem rights and our mortgage. And we're asking the court to reaffirm its prior holding, which is the 11th Circuit case, and N. Ray Bateman, that held an illegal plan such as this one does not discharge a creditor's in rem rights and its mortgage. Thank you, Mr. Newsome. You've reserved some time for rebuttal. We'll hear from Ms. Willis. Good morning. Before I begin, I would first like to convey Ms. McKinney's regret in not being able to join us today. She is recovering from a bronchial respiratory infection and thought it's safer for everyone if I present oral arguments in her stead. Madam Presiding Judge, and may it please the Court, my name is Audrey Willis, and I represent Appellee Sabrina McKinney, the standing Chapter 13 trustee for the Middle District of Alabama. Today, I will be explaining why a core principle of bankruptcy, namely the preclusive effect of a confirmed Chapter 13 plan, precludes a, I'm sorry, entitles a Chapter 13 debtor to a discharge upon completion of all of her plan payments. This Court should affirm the District Court's decision for two reasons. First, a creditor is precluded from collaterally attacking a confirmed Chapter 13 plan. And second, the Bankruptcy Code does not reward a creditor that sits on its rights. Counsel, I wonder if Henry Dukes binds us here. And under Henry Dukes, we're required to hold that the plan couldn't have stripped the in rem part of the mortgage. And if you think it doesn't bind us, which I assume we do, why doesn't it bind us? Your Honor, I don't believe that it binds the and that goes to the first reason as to why this creditor, this Court should affirm the District Court's decision, and that is Espinoza. Espinoza reaffirms the principle announced under 11 U.S.C. Section 1327, which binds and enforces a confirmed plan between a debtor and a creditor, regardless of whether the creditor objected. But secondly, I'm sorry, before you get onto the second reason, here's my concern with Espinoza. First of all, it would involve the maintenance and cure plan. It didn't involve a full balance plan like we have here. So it seems like it might be different. Second, we issued Henry Dukes after Espinoza came out, and we were certainly aware of Espinoza. So how does Espinoza help you out of this in light of what Henry Dukes held? Well, with Henry Dukes, the distinguishing factor between Henry Dukes and the case at Barr is the fact that the debt in Henry Dukes was what's referred to as a cure and maintain plan. Under a cure and maintain plan, the debtor pays only the pre-petition mortgage arrearage through the plan. In other words, the only debt that's, quote, provided for is the pre-petition mortgage arrearage. The ongoing mortgage payment is made directly by the debtor on her own to the creditor. Henry Dukes held that that ongoing mortgage payment is not considered provided for. Under Section 1328, a debtor is entitled to a discharge of all debts that are provided for in her Chapter 13 plan. So while that pre-petition arrearage would be, in effect, discharged and current, the ongoing mortgage debt would not be. In this case, the debtor did not propose a cure and maintain plan. She proposed a full balance claim under Section 1325. When you read 1325 together with Section 1328, the debtor would be entitled to a discharge of her mortgage because she provided for the entire balance of the mortgage in her Chapter 13 plan. Additionally, Espinosa, even though it was an unsecured student loan debt case, it's been applied to multiple types of cases and types of claims since the ruling came out. For example, this court held in In re Ilicita that Espinosa expressly controlled its decision. And in that case, a Chapter 13 debtor filed a motion to deem the mortgage on his homestead current and satisfied and therefore discharged. The mortgage creditor, of course, objected. This court held that the creditor received adequate notice of its treatment of the claim, but it failed to timely object or to appeal the order deeming that lien satisfied. And as in this case, the debt was fully provided for. The creditor did not object. The creditor did not appeal the confirmation order. And for those two reasons, Espinosa would affirm that that debt and that lien would be satisfied and extinguished. If you looked at the calculations for the number of periods and the amounts of payments, would you be able to tell that nothing more than the arrearage was going to be paid on the mortgage? Your Honor, I'm not, no. The documents that were attached were the mortgage and the note. But more importantly, it is neither the debtor nor the trustee's duty to review and speak to counsel for the creditor to clarify what's in the proof of claim. Right. But I guess my question is sort of a, where's the notice to the mortgage company? How would the mortgage company know, other than by the fact that it submitted a claim for just arrearage, how would the mortgage company know that nothing else was being provided for in the plan other than the arrearage and that it would not be able to recover the monies on the in-rem part of the mortgage? The creditor would know it wasn't going to receive the full amount because it filed the proof of claim. It filed the proof of claim for only $7,000 when the scheduled amount on the plan filed by the debtor and on the schedules listed an amount that was higher. Yes, but that was filed after they filed their claim. It was, Your Honor, but the creditor still received notice of that plan provided for by debtor as well as the schedules which would have been filed prior to the creditor filing its claim. That would have given the creditor its first initial notice that the debtor had filed bankruptcy. But just to make sure I understand, there's nothing, like, there's no map that the mortgage company could have done by looking to the plan to understand that its entire mortgage was not provided for and only the arrearage was provided for. Is that correct? Actually, Your Honor, no, Your Honor, I believe there was another time when the creditor would have known that it wasn't getting its full amount. During the pendency of the debtor's Chapter 13 case, the creditor filed a motion to dismiss the debtor's case because the debtor had a lapse in plan payments. The debtor was supposed to be paying a fixed amount each month and then the trustee would disperse that money to all creditors provided for in the plan. When the creditor realized it wasn't getting its amount, which would have been different than if the debtor had been making the mortgage payment, the mortgage payment amount was different than what the plan amount had. The creditor realized it was not receiving its monthly payment that was provided for in the plan and filed a motion to dismiss in the bankruptcy case to start receiving those mortgage payments again. Additionally, to resolve that motion to dismiss, the creditor actually entered into a consent order with the debtor stating that the debtor needed to keep resuming making her Chapter 13 plan payments so that the creditor mortgage company could receive those mortgage payments again. That was only midway through the case. I'm sorry. I'm a little confused. Maybe you can help me out. I thought that the reason that the payments were lower than what, I guess, than what the mortgage company had asked for on the arrearages was because the amount of the interest rate was a little lower than what they had asked for. I might be mistaken. Maybe you can explain that. Your Honor, I'm not sure why the amount was lower. Based on the proof of claim and the brief filed by the creditor's attorney, the creditor only filed it for the arrearage amount, which would have included any contract interest rate. Any additional post-petition interest would not have been able to be included. That post-petition interest would be paid through the Chapter 13 plan. While the contract interest rate was different than what was provided for in the plan, the creditor never objected to that aspect of the plan or even the plan at all. Another question for you. We've said in Henry Dukes that a mortgage company doesn't have to do anything when there's a bankruptcy going on. No matter what happens in the bankruptcy, even if it does nothing, that its in-rem interest continues through the bankruptcy proceedings and the discharge. Why doesn't that address the issue here? For two reasons, Your Honor. First, because the creditor in this case chose to actively participate in this case initially by filing a proof of claim in order to be paid through the Chapter 13 plan. Second, because in Henry Dukes, the debt in that, the ongoing mortgage debt, would never have been discharged anyways because it was not provided for as this Court held in the plan. In this case, because the debt was provided for under 1325, whereas in Henry Dukes it was provided for under Section 1322, 1328 discharges any debts provided for under 1325, which is the full payment claim. Okay, one more question for you before you sit down if you don't mind. So, if we were to affirm today, what would a mortgage company have to do going forward in this same situation? Very simply, Your Honor, read the plan. But what would they have to file? What would they have to do in order to preserve their interest in the in-rem part of the property? If they, and Your Honor, I do see that my time is out. I may briefly respond. Yes, please. In order to preserve the right so that the in-rem debt would not be discharged, they would need to object to confirmation and request either one, that that debt would not be discharged, or two, not provide for it in the plan and instead provide for it, instead list it as an ongoing direct payment, which there is a section in the Chapter 13 plan that allows a debtor to do that. They also could have entered into a consent order allowing that. Thank you very much. Thank you. All right, and now we'll hear from Mr. Granger. Good morning, Your Honor. My name is Chuck Granger, and I represent Judith Bozeman, the debtor in the underlying bankruptcy case in Appalee. May it please the Court. I want to start by addressing one more thing from the question that Your Honor raised just briefly. I would also point out they have the opportunity to object to the discharge and raise that at that time as far as if they want to bring that before the judge as to whether or not in-rem rights are cut off. I will point out that in Judge Sawyer's order, what he found was that the entire debt had been paid, which is a requirement under state law, and he made that- Mr. Granger, what is before this Court exactly? As I understand it, there were several things that happened. First, the trustee files a notice that the plan will be complete on a certain date. And then the next thing, which is kind of unrelated, is that the mortgage company files an objection to the trustee's notice. Then the third thing that happens is the debtor files a motion to have the mortgage declared satisfied. Is that the correct way? Yes, there were several other things as well. And the Court ruled on the motion to have the mortgage satisfied. Yes, sir, they did. And that's what's before us. Okay. Whether the Court erred, and of course the District Court affirmed, erred in declaring the mortgage satisfied. I agree with you, Your Honor. That's it, isn't it? I think that's the $64,000 question. And what does the law say that the bankruptcy judge had to look to to determine whether the mortgage is satisfied? That's right, Your Honor. What evidence does the Court look to? I don't think, I speak for myself, the history of the thing back and forth is kind of irrelevant to what the Court looks to. It's the claim, Your Honor. Because the Court approved a plan, and it was confirmed, so I would suggest that the Court look straight at the plan. That's true as well. All right. What was there in the plan that allowed the Court to say that the mortgage was satisfied? Your Honor, the judge looks to the claim to determine the amount owed on the total secured debt, which is... I've got the plan right here. Yes, sir. But where do I look in the plan? By rule, that number is derived from the claim and not the plan. The claim of the creditor governs the amount owed by rule, not the plan. Now, I know that's strange, isn't it? But I need help. If the Court looks at the plan, if that's the law, then I've got the plan. Where does the Court look to determine that the mortgage is satisfied? What language in the plan? Judge Sawyer looked to the fact that it was being paid fully through the plan, and the amount of the claim filed by the creditor had been paid in full. Does the Court rely solely on the fact that for 58 months, the debtor paid $503? Is that it? Period. No, sir. That's not. It's whether the claim had been paid that was filed by the creditor. That doesn't refer to the mortgage, is what the point is. Yes, sir, but the claim was the amount that they paid through the plan. And as to the interest rate, let me say this. The rule does not apply that to the interest rate. So if the creditor claims an interest rate on the claim form that's different than that's proposed in the plan, then that interest rate is not going to govern what they get paid. But the plan, when we file it, is a proposal. Okay? And the creditor normally will object if they don't like the interest rate. I'll at least get an email from them saying, hey, we're not going to limit it. I'm not looking. You're straying now from what was before the judge. Yes, sir. In declaring whether the mortgage was satisfied. That's the only question we have, isn't it? The claim. The claim. The total amount of the secured claim is listed. It was erroneous in hindsight. We didn't find out it was erroneous until the case had paid out. But it was erroneous, and that's what the judge looks to. He looks to the amount of the claim. But, I mean, are you saying your client didn't know that it was erroneous? I mean. No, Your Honor, I'm not saying my client understood anything about this. My client is barely literate. But, and she lives in a $17,000 house. I'm just doing the best I can to help her. But I'm saying that the creditor is due to understand the rules of the bankruptcy court. And by rule, the amount that they put on the claim form as a total amount of the claim is what they're entitled to. And they should know that. It's not going to be based on the plan when the rule says it's based on the claim. Okay? And so that's the position that I wanted to offer to the court. I believe Espinoza is right down the middle lane. And I think it's a situation where we have to have finality. We have to have res judicata when we get a plan confirmed. We can't live with somebody hiding the ball, waiting until the end of the case and saying, oh, wait a minute, we're still owed money. When they've been hip deep in this case the whole time. I do believe they had noticed. And I think Judge Sawyer found facts to indicate that the creditor knew that this was being paid entirely through the plan. He cited that in his order. This is not a lien strip. It's not a cram down. It's paying it in full. And we have a right to do that because the contract provides for prepayment. Back to my question. Yes, sir. The court is going to look at the mortgage because that's not before the court, the mortgage. Right. To see whether it's satisfied. Right. Okay. Uh, it's going to climb in the confirm plan. Yeah. Let's suppose there's nothing in the plan, hypothetically. Okay. That tells the court whether the plan is the mortgage is satisfied. Nothing before it. In other words, it can't answer the question. So what do you do under those circumstances? Well, the plan is filed early in the case. Assuring the case isn't going to be informed by the plan. As I read the plan, you can't tell from the plan whether the mortgage is satisfied. That's the ruling. The mortgage is satisfied. I think it either gets satisfied because the debtor paid the 503 a month for 58 months. And that's the end of the inquiry. Or there's something left. Yes, your honor. I respectfully disagree. I believe by rule that the amount that's to be paid by the trustee and through the plan is the amount set out in the claim. And that may differ from what the plan says. And by rule, if it does, then the claim governs. And they knew what the claim was. They knew it was different than what the plan was. They knew we were paying them in full through the plan through the entire case. And yet at the end, they realized they screwed up and put the wrong amount on their proof of claim form. And then all of a sudden, we've got all these problems with it. So just to be clear, there wasn't $503 per month paid for 58 months, right? No, your honor. And that is the $503 is either a plan payment or what's known as a specified monthly payment. And that's not to say that that's going to be paid for 58 months. That the plan can be paid up to 58 months. We're limited to 60 months. And we usually design a 58-month plan. But it can be paid off sooner than that. It can even be paid off in less than 36 months, as long as unsecured creditors are being paid in full. And that was the problem we had. The trustee objected. They said, look, this isn't going to last 36 months. You're going to have to pay unsecured in full. Thank you, counsel. I think we have your argument. All right. And we'll hear again from Mr. Newsom. Mr. Newsom, do you agree that the only issue before the court is whether or not the mortgage is satisfied? Yes, sir. That's what the court ruled on. Yes, sir. You agree? Yes, sir. All right.  If I'll just say, if all the payments were made in the proposed plan, if all the payments that were in the plan— Well, did it just look to the payments for 58 months? It called for 58— If that's it, and the money was paid, then the mortgage is satisfied. But it wasn't paid. That's why we're here. It wasn't paid. They only made 28 payments. That's why we're here. Suppose the court looks at the plan and can't tell whether the mortgage is satisfied, one way or the other. What does it do? Because as I read the plan, it's very bizarre. If I were the judge, I wouldn't know what it means. It never should have been put out for confirmation. So what do I do if I can't answer the question? But I have to answer it. Yes, sir. Um, you have to look to the terms of the plan specifically said for the mortgage lien to be released, they had to make 58 payments of 454. That's not dependent on our proof of claim, what we put on our proof of claim or anything else. Their plan says we retain our lien unless they make 58 payments of 454. They made 28 payments. And the argument about the motion to dismiss is very misleading. We filed a motion to dismiss because the debtor made no payments for six months and the trustee never filed their own motion to dismiss. I've been doing bankruptcy law for 22 years. Usually when a debtor misses like two payments, a trustee files their own motion to dismiss. In this case, the debtor missed six months. Nothing was done. You know, the debtor filed a plan that was illegal in five different ways. The debtor's attorney and the trustee recommended it for confirmation. MCS slept on its rights and didn't object. And so they're bound by the terms of the confirmed plan, just like this court held in Bateman. And she had the automatic stay in effect during the life of her plan. Her plan staved off our foreclosure. That's why she filed. But just as in Bateman, once she got her discharge, we maintained our inrim rights and our mortgage just as the U.S. Supreme Court held in Bullard over 135 years ago. And just as Your Honor pointed out in Enright-Dukes, you know, there were lines on Espinoza's misplaced. There's several cases that have Espinoza, have tried to apply Espinoza to home mortgages. And the courts have held Espinoza is not a novelist to this case because the two cases involve different statutory provisions, procedural postures, and plain language. Espinoza deals with student loan, unsecured debt. There's no inrim rights in an unsecured loan. It has nothing to do with home mortgage debt. Another case, the bankruptcy court's reliance on Espinoza is misplaced. The plaintiff's request to avoid the liens is denied. Just as this court has held post-Espinoza. Espinoza has nothing to do with home mortgages. Student loan debt is dischargeable under certain provisions of the bankruptcy code. I'm just asking you to reaffirm your holding and in rebatement that our mortgage creditors' inrim rights survive post-discharge. Thank you, counsel. We appreciate the arguments and we will be in recess for the day.